UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOURDEN GRIFFIN,<br>individually and on behalf of her five<br>minor children,<br><br>        Plaintiff<br><br>        v.<br><br>CITY OF PRESQUE ISLE, et al.,<br><br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)   1:25-cv-00420-SDN<br>)<br>)<br>)<br>)<br>) |

**RECOMMENDED DECISION ON**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

In this action, Plaintiff alleges that Defendants retaliated against her following her reports of health and safety concerns regarding the subsidized housing unit in which she resides with her five minor children. Plaintiff contends that in response to her reports, Defendants (the Presque Isle Housing Authority and the City of Presque Isle) threatened to terminate her lease and attempted to enter her home improperly to conduct unlawful repairs to her housing unit.

Plaintiff moves for a preliminary injunction directing Defendants from engaging in retaliatory conduct, interfering with her housing, and terminating her housing voucher. (Motion for Preliminary Injunction at 3, ECF No. 18; Motion for Preliminary Injunction at

4, ECF No. 20.)[1]  Following a review of the record and after consideration of the parties' arguments, I recommend the Court deny the motion for preliminary injunction.

## FACTUAL BACKGROUND

Defendant Presque Isle Housing Authority (PIHA) receives federal funds from the U.S. Department of Housing and Urban Development (HUD) to administer Housing Choice Vouchers in the Section 8 Voucher Program.  PIHA issues vouchers in accordance with HUD regulations and the Housing Assistance Payment (HAP) contract.  Participants in the voucher program and the owner of the leased property agree to the terms of the HAP contract, which includes inspection standards, rent policies, and other regulations.

Plaintiff is a participant in the program and has used her voucher to rent property in Presque Isle (the property).  The voucher covers a portion of the rent and Plaintiff must pay the balance.  Between April 2024 and July 2025, Defendants cited Plaintiff with multiple alleged violations of the terms of her lease, such as allegedly allowing other individuals and a dog to reside in the property.  Defendants acknowledge that in August 2024, Plaintiff made a complaint to HUD about the property.

On August 13, 2025, the annual inspection of the property was conducted.  The inspector identified certain deficiencies—some that PIHA needed to correct, and some that

---

[1] After Plaintiff filed her motion for preliminary injunction and before Defendants responded to the motion, Plaintiff filed another motion, which was docketed as a motion for temporary restraining order and a motion for preliminary injunction. (*See* ECF No. 20.)  Plaintiff subsequently withdrew the motion for temporary restraining order (ECF No. 46). Plaintiff also filed a motion to supplement her motion for preliminary injunction. (Motion to Supplement, ECF No. 19.)  I grant the motion to supplement and consider Plaintiff's initial motion (ECF No. 18) and her supplemental filings (ECF Nos. 19 & 20) as one motion for preliminary injunction.

Plaintiff was required to address. On September 10, 2025, PIHA notified Plaintiff of its need to access the property to perform some work on September 23 and of the fact that on September 12, a lead abatement contractor would be at the property. Plaintiff denied PIHA access and initially denied the contractor access. Plaintiff maintained that the repairs were undocumented, and that PIHA failed to demonstrate that the maintenance workers were properly certified to perform the work. Plaintiff contends that PIHA's executive director asserted that if she did not allow the work to be done, PIHA would terminate Plaintiff's lease. According to Plaintiff, on September 18, 2025, the executive director also threatened to terminate Plaintiff's voucher.

Plaintiff subsequently allowed the contractor to access the property to conduct some tests and permitted a maintenance supervisor to make a few repairs. Thereafter, PIHA attempted to access the property to perform some of the other necessary work, but Plaintiff did not allow access.

On October 6, 2025, PIHA notified Plaintiff in writing that she was in breach of the lease agreement for refusing to allow PIHA access to perform necessary maintenance. On October 7, 2025, the inspector recommended that the property be placed on HAP abatement and that the voucher be terminated. PIHA has not terminated the voucher or the HAP contract. The relevant HUD regulations require PIHA to afford Plaintiff notice of the termination of the HAP contract and an informal hearing before PIHA could terminate a participant's voucher. On October 8, 2025, PIHA notified Plaintiff of a lease violation for the failure to pay rent since April 2025.

## DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008).  A district court must decide whether the party seeking a preliminary injunction has carried the burden of establishing that the balance of four factors weighs in its favor:

> (1) the movant's likelihood of success on the merits, (2) whether and to what extent the movant will suffer irreparable harm in the absence of injunctive relief, (3) the balance of relative hardships, and (4) the effect, if any, that an injunction or the lack of one may have on the public interest.

*Becky's Broncos, LLC v. Town of Nantucket*, 138 F.4th 73, 77 (1st Cir. 2025) (quotation marks omitted).  "[T]he four factors are not entitled to equal weight in the decisional calculus; rather, likelihood of success is the main bearing wall of the four-factor framework." *Corporate Technologies, Inc. v. Harnett*, 731 F.3d 6, 9–10 (1st Cir. 2013) (quotation marks and modifications omitted).

Although Plaintiff asserts multiple causes of action in her amended complaint, the gravamen of Plaintiff's claim is a retaliation claim under the federal Fair Housing Act (FHA), 42 U.S.C. §§ 3601 *et seq.*  Broadly stated, the FHA prohibits those involved in the business of buying, selling, or renting housing from discriminating based on race, color, religion, sex, disability, familial status, and national origin. 42 U.S.C. §§ 3603–3605.  The FHA also makes it unlawful to "coerce, intimidate, threaten, or interfere with any person . . . on account of [the person's] having exercised or enjoyed, or on account of [the person's] having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the [FHA]."  42 U.S.C. § 3617.  To prevail on a retaliation claim

4

under the FHA, therefore, a plaintiff must establish that "'(1) plaintiff engaged in protected activity; (2) defendant subjected plaintiff to an adverse action; and (3) there was a causal connection between the protected conduct and adverse action.'" *Saint Pierre v. NFG Housing Partners, LP*, No. 2:21-cv-00300-GZS, 2023 WL 6378029, at *8 (D. Me. Sept. 29, 2023) (quoting *Kris v. Dusseault Fam. Rev. Tr.* of 2017, No. 18-CV-566-LM, 2019 WL 4647211, at *5 (D. N.H. Sept. 24, 2019)).

      Plaintiff evidently asserts that Defendants took adverse action against her for complaints about the presence of lead dust, the alleged need for workers with additional training, the alleged need for a local permit, her alleged right to refuse entry for the repairs, and other disputes about billing accuracy and maintenance issues. While complaints regarding violations of state laws or local ordinances and the refusal to allow entry could perhaps be protected under state law, they are not considered bases for an action under the FHA. *See Kummerow v. Ohawcha.org*, No. 21-CV-635-WMC, 2022 WL 873599, at *3 (W.D. Wis. Mar. 24, 2022) ("the [FHA] does not authorize plaintiff to sue defendants in federal court for claims related to the habitability of the . . . apartment.  Instead, landlord-tenant law is traditionally the province of the states, meaning that plaintiff *may* have a remedy in state court, or in a state or federal administrative proceeding, concerning the conditions of his dwelling, but not in federal court") (citations omitted) (emphasis in original); *Atterbury v. Sanchez*, No. CV 11-4932 SI, 2012 WL 3638571, at *5 (N.D. Cal. Aug. 22, 2012) ("A landlord's actions that are based on a tenant's complaints" about property conditions "are not actionable as discrimination under the FHA").

Because Plaintiff has not shown or alleged that the reports and refusals to permit access involved reports of discrimination based on race, color, religion, sex, disability, familial status, or national origin, the reports and refusals do not appear to involve the exercise of a right granted or protected by the FHA. Although the complaint, motion, and supporting documents contain the label "discrimination," Plaintiff has provided insufficient facts to establish a likelihood of success on such a claim.[2]

Defendants concede for purposes of the motion for a preliminary injunction that Plaintiff made a complaint to HUD in August 2024 and filed this lawsuit in August 2025, which acts would likely constitute protected activity. As to the August 2024 complaint to HUD and the August 2025 lawsuit, therefore, the question is whether Plaintiff is likely to satisfy her burden to prove that Defendants took adverse action against her as the result of her conduct.

Because neither party has provided any facts regarding the August 2024 protected conduct or the events preceding or following the conduct, the issue is difficult to assess. Given that Defendants have not terminated the HAP contract nor Plaintiff's voucher, Plaintiff evidently relies on the threats to do so to satisfy the adverse action element. One court recently found that threats to terminate a person from the Section 8 voucher program could potentially be an adverse action. *See Watkins v. Chau*, No. 1:24-cv-11328-JEK, 2025

---

[2] Plaintiff alleges that she and her family members have been diagnosed with certain conditions that qualify as disabilities, but she has not alleged facts to permit a plausible inference of disparate impact, failure to make reasonable necessary accommodations for a disability, or discriminatory motive for purposes of a disparate treatment claim. *See, e.g.*, *Palencar v. Theriault*, No. 1:15-CV-00371-JDL, 2015 WL 7750197, at *4 (D. Me. Oct. 23, 2015) (summarizing the three types of discrimination claims and finding mere allegation of disability and harm insufficient without additional facts).

WL 2553442, at * 6 (D. Mass. Sept. 4, 2025). Here, the executive director's account of the communications with Plaintiff suggests that her reference to the possible termination of Plaintiff's participation in the program was in the context of explaining to Plaintiff the consequences of Plaintiff's refusal to allow PIHA access to the property to make necessary repairs. Whether a fact finder is likely to conclude that the statements were threats is debatable.

Even assuming that Plaintiff is likely to prevail on the adverse action element, Plaintiff has failed to demonstrate that she is likely to establish that the executive director's statements and any actions of Defendants are causally related to Plaintiff's report to HUD. First, the temporal relationship between the report and the alleged adverse action (approximately 12 months) does not suggest a causal relationship. Furthermore, based on the current record, a fact finder is just as or more likely to conclude that the executive director's statements were related to Plaintiff's failure to comply with her contractual obligations following the annual inspection rather than the result of complaints Plaintiff made about discrimination.[3]

In short, Plaintiff has not demonstrated that she is likely to prove that Defendants took adverse action against her due to her protected activity.[4] Because Plaintiff has failed to demonstrate that she is likely to prevail on the merits of her federal claim, any potential

---

[3] To the extent Plaintiff contends that Defendants took adverse action as the result of her filing this action in addition to her report to HUD, Plaintiff has presented no facts to support the contention.

[4] Plaintiff asserts other theories of recovery in her amended complaint but has presented no facts or persuasive argument that would support a finding that she is likely to prevail on any of the theories of recovery.

state law claims are unlikely to be adjudicated in federal court, and "the remaining [injunctive relief] factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

## CONCLUSION

Following a review of the record and after consideration of the relevant issues, for the reasons explained herein, I grant Plaintiff's request to supplement her motion for preliminary injunction and I recommend the Court deny Plaintiff's motion for preliminary injunction.

## **NOTICE**

Any objections to the order on Plaintiff's motion to supplement the motion for preliminary injunction must be filed in accordance with Federal Rule of Civil Procedure 72.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 21st day of January, 2026.