UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOURDEN GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25-cv-00420-SDN |
| | ) | |
| CITY OF PRESQUE ISLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PENDING MOTIONS**

Plaintiff Jourden Griffin alleges in her amended complaint that Defendants, a municipality ("Presque Isle") and a public housing entity (Presque Isle Housing Authority, "PIHA"), retaliated against her based on her reports of health and safety concerns regarding her federally subsidized housing unit. ECF No. 13. Presque Isle and PIHA move to dismiss the amended complaint. ECF Nos. 54 & 55. Ms. Griffin moved for leave to file a surreply as to the motions to dismiss. ECF No. 72. Ms. Griffin also recently filed a motion for a temporary restraining order. ECF No. 102.[1] After review of the record and consideration of the parties' arguments, for the reasons that follow, the Court

[1] The pending motion for temporary restraining order is one of multiple motions Ms. Griffin has filed seeking injunctive relief. In September 2025, Ms. Griffin filed a motion for a temporary restraining order, ECF No. 14, which the Court denied on procedural grounds, ECF No. 16. In October 2025, Ms. Griffin filed a similar motion addressing the procedural deficiencies. ECF No. 20. The Court deferred ruling on the motion to permit the parties to attend a judicial settlement conference, ECF Nos. 33 & 45, after which Ms. Griffin withdrew her motion. ECF No. 46. In October 2025, Ms. Griffin filed a motion for a preliminary injunction. ECF No. 18. After the Magistrate Judge recommended denying the motion, ECF No. 63, Ms. Griffin initially objected, ECF No. 71, but then voluntarily withdrew the motion. ECF No. 74. In March 2026, Ms. Griffin filed another ex parte motion for a temporary restraining order, ECF No. 83, which motion the Court denied. ECF No. 84.

**DENIES** Ms. Griffin's motion to file a surreply and motion for a temporary restraining order, and **GRANTS** the Defendants' motions to dismiss.

## I. Motion for Leave to File a Surreply

Ms. Griffin asks the Court for leave to file a surreply in support of her opposition to the motions to dismiss. ECF No. 72. District of Maine Local Rule 7 allows parties to file dispositive motions, opposing parties can file a response, and the moving party can file a reply. "Absent highly unusual circumstances, sur-replies are not favored." *In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 832 F. Supp. 2d 74, 78 (D. Me. 2011).

Here, Ms. Griffin has not cited, and the Court cannot discern, any exceptional circumstances that would warrant a surreply. Rather, the circumstances demonstrate the reason surreplies are disfavored. In her response to the motions to dismiss, Ms. Griffin raised claims and arguments that were not included in the amended complaint. ECF Nos. 65 & 68. In reply, Presque Isle and PIHA urged the Court not to consider the new claims and arguments but also addressed the merits of the new claims and arguments. ECF Nos. 69 & 70. Through a surreply, Ms. Griffin evidently wants to assert more new factual allegations and arguments. ECF No. 72. A review of the record reveals that Ms. Griffin has had sufficient time and opportunity to assert her arguments in opposition to the motions to dismiss. Additional filings are not warranted.[2]

## II. Motions to Dismiss

Presque Isle and PIHA move to dismiss the amended complaint for various reasons, including Ms. Griffin's failure to allege facts that would support her claims. ECF Nos. 54 & 55.

[2] The Court's cursory review of the proposed surreply reveals that filing would be futile because Plaintiff's arguments would not yield a different result.

### A. Factual Allegations[3]

Ms. Griffin rents a housing unit at 29 Micmac Drive in Presque Isle ("the property") where she resides with her five children. *Amended Complaint* at 1, ECF No. 13. Ms. Griffin is a participant in the Section 8 voucher program funded by the United States Department of Housing and Urban Development (HUD). *Id.* at 2. Ms. Griffin has been diagnosed with multiple health conditions, including bipolar 1 disorder, general anxiety disorder, post-traumatic stress disorder, major depressive disorder, a sleep disorder, and a ruptured left biceps tendon. *Id.* at 4–5. Defendant Presque Isle Housing Authority (PIHA) manages the housing facility where Ms. Griffin lives. *Id.* at 2. Defendant Presque Isle is the municipality in which the property is located and appoints the board members who govern PIHA. *Id.* at 8.

Sometime in 2023, Ms. Griffin requested a repayment plan for money that she evidently owed to PIHA. *Id.* at 3–4. PIHA had a policy allowing for repayment plans, and another tenant was provided with a repayment plan, but PIHA denied Ms. Griffin's request and initiated eviction proceedings against her. *Id.* at 4.

Ms. Griffin cites nine lease violation notices that PIHA issued to her, some or all of which she disputes: (1) an April 2024 violation for allegedly housing multiple homeless individuals; (2) an April 2024 violation for having a dog without approval; (3) a July 2024 violation for speaking rudely to and making rude gestures to a maintenance staff member; (4) an October 2024 violation for allegedly allowing more homeless individuals and a

[3] The facts are drawn primarily from Ms. Griffin's amended complaint. ECF No. 13. The Court has also included some facts from undisputed documents to which Ms. Griffin referred in the amended complaint and filed elsewhere in the record. *See Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (Without converting a motion to dismiss into a motion for summary judgment, "[a] district court may. . . consider documents incorporated by reference in the complaint, matters of public record, and other matters susceptible to judicial notice.") (quotation modified).

former household member to live in the residence; (5) an October 2024 violation for trash in the yard; (6) an April 2025 violation for trash outside on two occasions in the several months prior; (7) an April 2025 violation involving a smoke detector; (8) an April 2025 violation for having a deadbolt on the front exterior door; and (9) a July 2025 violation for refusing to schedule work during the previous week. *Id.* at 4.

At some point, Ms. Griffin made "complaints" about the property, *id.* at 4, and at some point, the Maine Center for Disease Control and Prevention became involved, apparently in connection with a program to prevent childhood lead poisoning, *id.* at 2, 4.

In March and April of 2025, a contractor for the Maine Department of Health and Human Services collected samples, performed professional lead testing, and prepared a report. *Id.* at 2, 10; ECF Nos. 102-5 & 105-2.[4] The test results were negative (below recommended limits) for the water and for the paint on the walls, doors, windows, and other structures in the apartment, ECF No. 105-2 at 14–17, 27, but the results were positive (exceeding recommended limits) for lead in swabs of dust on the basement floor, the basement stair treads, and the living room floor. ECF Nos. 102-5, 105-2 at 10, 24–25.

In June 2025, Ms. Griffin requested from PIHA certain documents regarding her tenancy, but counsel for PIHA required Ms. Griffin to provide legal justification to access the records. ECF No. 13 at 3. According to Ms. Griffin, the attorney also asserted that PIHA was not obligated to follow HUD rules and guidelines. *Id.* at 10.

Ms. Griffin asserts that PIHA failed to abate the lead dust hazard. *Id.* at 2. Ms. Griffin also alleges other problems with the property, including the presence of mold,

---

[4] Ms. Griffin refers to and relies upon the lead testing report in her amended complaint and filed a portion of the report as an attachment to the most recent motion for a temporary restraining order. Presque Isle and PIHA filed the full report in their response to the motion for a temporary restraining order, the accuracy of which report Ms. Griffin evidently does not dispute.

leaks, rot in a portion of the bathroom floor, and damaged or inoperable doors and windows. *Id.* Additionally, she alleges that PIHA scheduled work or repairs without proper notice and using unqualified contractors. *Id.* at 3, 5–6. Ms. Griffin also alleges that PIHA violated her privacy by disclosing certain information to third parties, and that PIHA fraudulently obtained federal subsidies by having a dual role as landlord and voucher issuer, failing to use the proper paperwork, using improper inspection procedures, and forging Ms. Griffin's signature on documents. *Id.* at 7–9. Ms. Griffin further claims PIHA overcharged her rent, retained overpayments from her or HUD, and imposed late fees over the legal limit. *Id.* at 6.

Ms. Griffin's claims against Presque Isle are based on an alleged "oversight failure" regarding PIHA's conduct. *Id.* at 8. Ms. Griffin asserts that even though Presque Isle is responsible for appointing the board members for PIHA, the city failed to intervene on her behalf. *Id.* Ms. Griffin also alleges: (1) a city code enforcement officer at some time issued a 30-day correction notice to PIHA but the notice "remains unenforced"; and (2) when Ms. Griffin was first admitted to the Section 8 voucher program during or before 2019, a city employee told one of PIHA's employees to change the inspection result from "fail" to "passed with comment." *Id.*

**B. Legal Standard**

Rule 12(b)(6) motions to dismiss test the legal sufficiency of a complaint and require courts to determine whether the alleged facts show that plaintiffs have pleaded a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To resolve a Rule 12(b)(6) motion, courts employ a structured, two-step inquiry. *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions." *Schatz*

*v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). The Court need not credit legal or factual allegations that are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (quotation modified). Second, the Court takes "the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," and determines whether those facts "plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55. If plaintiffs fail to "nudge[ ] their claims across the line from conceivable to plausible," the Court must dismiss those claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "something more than merely possible or merely consistent with a defendant's liability," *Germanowski v. Harris*, 854 F.3d 68, 71–72 (1st Cir. 2017) (quotation modified), but does not impose a "probability requirement," *Iqbal*, 556 U.S. at 678.

## C. Discussion

### *1. ADA, Rehabilitation Act, and FHA Claims*

Ms. Griffin argues Presque Isle and PIHA failed to provide a reasonable accommodation for her disabilities and retaliated against her in violation of the Americans with Disabilities Act (ADA), § 504 of the Rehabilitation Act, and the Fair Housing Act (FHA).[5]

To state a reasonable modification/accommodation claim, a plaintiff must show: (1) the plaintiff is a person with a disability; (2) the defendant is covered by one of three statutes; (3) the defendant has a discriminatory policy or practice in effect; (4) the plaintiff

[5] Although the various disability discrimination statutes have somewhat different language, courts often address them together when more than one applies because the "standards are generally the same under all three statutes[.]" *Friedman v. Cent. Me. Power Co.*, No. 2:20-cv-00237, 2021 WL 1234638, at *2 (D. Me. Mar. 31, 2021).

requested a reasonable modification in that policy or practice which would have afforded the plaintiff access to the goods, services, or program; (5) the modification was necessary to afford that access; and (6) the defendant refused to modify the policy or practice. *See Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307–08 (1st Cir. 2003).

The allegations in the amended complaint do not support a plausible claim of disability discrimination because there are no facts to support the third, fourth, or fifth elements. Ms. Griffin alleges three accommodation requests: (1) remote access to appointments; (2) abatement of lead hazards; and (3) relocation if necessary. ECF No. 13 at 5. Ms. Griffin provides no information regarding the alleged policies she wanted PIHA to modify, and there are no facts that show the alleged requests were disability-related. The absence of alleged facts regarding Ms. Griffin's conditions and any resulting limitations on major life activities precludes the requisite assessment of whether any policies effectively restricted access and whether the requested modifications were reasonable and necessary to provide equal access. *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012) ("An accommodation request must be sufficiently direct and specific, and it must explain how the accommodation is linked to plaintiff's disability.").

To proceed on a disability retaliation claim under the familiar burden shifting approach, a plaintiff must first make a prima facie showing that the plaintiff engaged in protected conduct, was subjected to an adverse action by the defendant, and there was a causal connection between the protected conduct and the adverse action; the burden then shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse action; and finally, the burden shifts back to the plaintiff to show that the proffered legitimate explanation is pretextual, meaning the defendant was motivated by a retaliatory animus. *See D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 41 (1st Cir.

2012). The First Circuit instructs that the prima facie case is not "a rigid pleading standard," *Rae v. Woburn Pub. Schs.*, 113 F.4th 86, 109 (1st Cir. 2024) (quotation modified), but the burden shifting framework and the prima facie case "may be used as a prism to shed light upon the plausibility of the claim." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013).

Ms. Griffin argues she satisfies the protected conduct element because she made complaints about the property. However, the amended complaint lacks sufficient facts regarding the complaints that she made. Ms. Griffin does not allege when she made the complaints, to whom she made the complaints, or the substance of the complaints. Without any facts regarding the complaints, a fact finder could not conclude that the complaints were disability-related and thus protected conduct.

Even if the allegations were sufficient to support a finding that Ms. Griffin engaged in protected conduct and even if some of PIHA's alleged conduct qualifies as adverse action,[6] the allegations would not support a causal relationship finding. Ms. Griffin evidently relies on the temporal relationship between the complaints and the notices of lease violations and the eviction attempt. ECF No. 13 at 4. In some cases, the temporal proximity between protected conduct and adverse action can support a plausible inference of causality, but the proximity must be very close. *See Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 25 (1st Cir. 2004). Indeed, even close proximity can be insufficient "particularly if the larger picture undercuts any claim of causation." *Cordero*

[6] The alleged eviction attempt in December 2023 involving rent arrears and the alleged refusal to provide a payment plan could plausibly constitute adverse action, but the mere assertion of a lease violation without any alleged penalty, lease termination, or attempt to evict, would not qualify as adverse action. *See Shervin v. Partners Healthcare Sys., Inc.*, 804 F.3d 23, 50 (1st Cir. 2015) (noting that adverse actions must involve conduct significant enough to deter a reasonable person from reporting discrimination).

*Ayala v. U.S. Postal Serv.*, No. CV 20-1239, 2024 WL 2199005, at *12 (D.P.R. Mar. 27, 2024) (quoting *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003)). In this case, the timing alleged in the amended complaint cannot support a causal inference because Ms. Griffin did not allege any facts regarding the timing of her complaints.[7]

The other allegations in the amended complaint also undermine the plausibility of an inference of retaliatory motive based on timing alone. In the amended complaint, Ms. Griffin asserts that she made reports about living conditions or safety risks (i.e., habitability concerns), but not about disability discrimination. ECF No. 13 at 4. While complaints about landlords allegedly violating habitability rules, codes, or standards could perhaps be protected under state law, such alleged violations are not considered bases for an action under the FHA without a clear connection to a protected characteristic. *See Kummerow v. Ohawcha.org*, No. 21-cv-635, 2022 WL 873599, at *3 (W.D. Wis. Mar. 24, 2022) ("[T]he [FHA] does *not* authorize plaintiff to sue defendants in federal court for claims related to the habitability of the . . . apartment.") (emphasis in original); *Atterbury v. Sanchez*, No. CV 11-4932, 2012 WL 3638571, at *5 (N.D. Cal. Aug. 22, 2012) ("A

[7] Generally, including in cases involving self-represented parties, a court does search the record from multiple stages of litigation for information that might not be included in the operative pleading. Even if the Court were to do so here, Ms. Griffin's other filings are of little assistance. For example, in Ms. Griffin's objection to the recommended decision on her since-withdrawn motion for a preliminary injunction, Ms. Griffin asserted that she made three complaints to HUD: (1) a December 2023 "complaint regarding coercion into eviction," (2) a July 2024 "complaint after PIHA staff yelled at [Ms. Griffin]," and (3) a June or July 2025 "complaint after PIHA obstructed [Ms. Griffin's] records request." ECF No. 71 at 6. The refusal to provide a payment plan and the eviction attempt evidently preceded the December 2023 complaint because they were apparently the subject of the complaint and thus could not have been caused by it. The first alleged assertion of a lease violation did not occur until more than four months later. The first few alleged lease violations preceded the June 2024 complaint and thus could not have been caused by it. Only two of the alleged lease violations followed within a month or a few months of a complaint. In other words, even assuming the overall pattern of asserting meritless lease violations (as opposed to an individual assertion of a violation) could constitute adverse actions, the length of the overall period in question and the correlation between the assertions of violations and the HUD complaints is not suggestive of a retaliatory motive.

landlord's actions that are based on a tenant's complaints" about property conditions "are not actionable as discrimination under the FHA.").

In sum, the well-pled facts and reasonable inferences in the amended complaint, as distinguished from conclusory allegations, do not support a discrimination or retaliation claim.

*2. Criminal Laws, Rules, and Regulations*

Ms. Griffin cited at least two criminal statutes as bases for claims she asserted in the amended complaint. Even if the amended complaint contained sufficient facts to establish the elements of the crimes, which it does not, the criminal statutes do not authorize a civil claim against Defendants Presque Island and PIHA. "[I]t is well-settled that criminal statutes do not provide a private cause of action[.]" *Lundgren v. Universal Wilde*, 384 F. Supp. 3d 134, 136 (D. Mass. 2019); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("Generally, a private citizen has no authority to initiate a federal criminal prosecution. Only the United States as prosecutor can bring" criminal charges against a defendant) (quotation modified)).

Similarly, the amended complaint contains several counts based on alleged violations of federal administrative rules and regulations. None of the cited rules and regulations suggest a congressional intent to provide a private cause of action based on the rules, however, and Ms. Griffin provides no authority to support an argument that the cited regulations are enforceable by a tenant in a civil suit against a lessor. *See Padula v. Freedom Mortg. Corp.*, No. 19-cv-11666, 2020 WL 4040725, at *5 (D. Mass. July 17, 2020) (discussing cases dismissing claims because the statute did not provide a private right of action to enforce a HUD regulation).

Perhaps recognizing that the statutes and rules do not create a private cause of action, in her response to the motions, Ms. Griffin asserted a new claim, citing a different statute, 42 U.S.C. § 4852d, and made factual allegations not found in the amended complaint. Such late attempts to avoid motions to dismiss are not permitted, however. *See Trans-Spec Truck Servs., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint."); *Davis v. Theriault*, No. 22-cv-00275, 2023 WL 5628193, at *32 (D. Me. Aug. 31, 2023) ("Parties cannot cure deficiencies in pleadings by asserting new facts and allegations in response to a motion to dismiss.").

Even if the Court considered the new claim, the alleged facts in the amended complaint do not support it. Section 4852d directs the Environmental Protection Agency to promulgate regulations requiring sellers and lessors of "target housing"—most housing built before 1978—to (1) provide a lead hazard information pamphlet; (2) disclose the presence of known lead-based paint or hazards; (3) allow ten days to conduct a lead risk assessment; and (4) include a specified lead warning statement and signed notification with the contract. 42 U.S.C. § 4852d(a)(1)(A)–(C), (2), (3). If a person "knowingly violates" the requirements, the statute authorizes a civil suit by a private individual for "[triple] the amount of damages incurred by such individual." *Id.* § 4852(b)(3). The amended complaint does not allege that PIHA knowingly failed to provide the requisite information, disclosures, or warnings. The amended complaint also does not include allegations that Ms. Griffin incurred damages resulting from the failure to provide the requisite information, disclosures, or warnings.

Even if the Court considered the new lead paint factual allegations in Ms. Griffin's response, Ms. Griffin has not alleged an actionable claim because the factual allegations

do not state a plausible claim. The relevant portions of Ms. Griffin's response contain the mere assertion that "PIHA failed to provide Plaintiff with the required lead hazard information pamphlet or any disclosure of known lead-based paint hazards" and that "[a]s a direct result of this failure, Plaintiff and her five minor children were exposed to lead hazards, causing them harm." *Response* at 6–7, ECF No. 68.

Ms. Griffin did not allege that PIHA knowingly failed to provide the requisite information and there are no alleged facts that would permit a plausible inference of the requisite knowledge. *See Smith v. Coldwell Banker Real Est. Servs.*, 122 F. Supp. 2d 267, 273 (D. Conn. 2000) ("[S]ince the statute only imposes civil liability for 'knowingly violating' one of the Act's requirements, they cannot be liable for their inadvertence or inattentiveness."). For example, the allegations and test results do not show lead paint on the walls and other structures of the property, and there are no facts to suggest PIHA had prior knowledge of the elevated lead levels in the dust in certain locations of the property.[8]

Furthermore, Ms. Griffin provides no factual support for the conclusory allegation that she incurred damages related to the lead paint allegations. Ms. Griffin does not allege any medical injuries, expenses, or mitigation costs, and there does not appear to be any authority finding damages "incurred" simply from some unquantified exposure to lead in

[8] Ms. Griffin also referred to her lease agreement and relied on it to support many of the claims in the amended complaint, including the new claim first raised in the response to Presque Isle and PIHA's motions to dismiss. Ms. Griffin did not attach a copy of the lease agreement, but PIHA filed a copy of the lease agreement in connection with one of Ms. Griffin's prior requests for injunctive relief, and Ms. Griffin did not dispute the accuracy of the copy. The lease agreement undermines the plausibility of Ms. Griffin's conclusory allegations because it contains a checked box reflecting the landlord provided the tenant with an attachment titled "Watch Out for Lead Paint Poisoning," and, just above Ms. Griffin's signature, the agreement states that she received a copy of a document titled "PROTECT YOUR FAMILY FROM LEAD IN YOUR HOME," the information was thoroughly explained to her, and she understood the possibility that lead-based paint may exist in the property. ECF No. 27-2 at 11–12. Ms. Griffin provided no explanation or clarification regarding the undisputed documentary evidence refuting the new allegations.

dust or some unspecified marginal increase in future risk. *See Christian v. Warwick Realty, LLC*, No. CA 14-152, 2014 WL 2434626, at *4 (D.R.I. May 29, 2014) (dismissing because "the Act requires that a claimant must have actual damage" and "[a]s drafted, this [c]omplaint has no allegation that any member of [p]laintiff's family has been damaged by lead exposure or the failure to disclose or that [p]laintiff has been damaged in some other way by the failure to warn about the risks of lead poisoning"); *compare Kaye v. Acme Invs., Inc.*, No. 08-12570, 2008 WL 5188712, at *3 (E.D. Mich. Dec. 8, 2008) ("Indeed, the clear language of § 4852d (b)(5)(3) itself refers to 'damages incurred,' indicating that there must be actual damages, not hypothetical, speculative, or even nominal damages."), *with Sweet v. Sheahan*, 235 F.3d 80, 82 (2d Cir. 2000) (alleging permanent injury to nervous system and hospitalization from lead poisoning following failure to disclose the presence of lead paint).

*3. Civil Rights Claim*

Ms. Griffin cites 42 U.S.C. § 1983 and alleges that Presque Isle and PIHA violated her federal rights under color of state law. The only constitutional right mentioned in the amended complaint is the right to due process of law. The Fourteenth Amendment prohibits state deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This protection has both substantive and procedural components. *Amsden v. Moran*, 904 F.2d 748, 753–54 (1st Cir. 1990). In either context, "a plaintiff, as a condition precedent to stating a valid claim, must exhibit a constitutionally protected interest in life, liberty, or property." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 8 (1st Cir. 2005).

Ms. Griffin's § 1983 due process claim fails because she has not alleged a deprivation of a protected liberty or property interest. Ms. Griffin does not allege she lost

her home or was evicted without legal process. To the contrary, the complaint suggests that when PIHA previously sought to terminate the lease in December 2023, it initiated legal proceedings against Ms. Griffin. Ms. Griffin argues in her opposition to Presque Isle and PIHA's motions that she has a protected property interest in her Section 8 housing voucher, but even if true, she does not allege that PIHA (or anyone else) has terminated the voucher.

Even if Ms. Griffin had alleged the deprivation of a legally recognized interest, the allegations do not support the finding of a constitutional violation. The alleged conduct (i.e., the issuance of notices of lease violations and the alleged failure to comply with certain environmental or building codes or regulations) is simply insufficient to support a substantive due process claim. *See Espinoza v. Sabol*, 558 F.3d 83, 87 (1st Cir. 2009) ("The substantive component of the Due Process Clause is violated by executive action when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.") (quotation modified); *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (conduct must be "extreme and egregious," "truly outrageous, uncivilized, and intolerable," or "stunning"). Further, procedural due process claims do not arise every time a plaintiff alleges an employee of a state or local entity fails to comply with a federal, state, or local procedural rule, because there are ordinarily post deprivation remedies available to redress such conduct. *See S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.*, 775 F.3d 82 (1st Cir. 2014) (public employees' "alleged . . . error—if error it was—cannot save the [plaintiff]'s procedural due process claim, at least so long as an adequate, post-hoc remedy is available"). Ms. Griffin does not allege, and there is nothing to suggest, that the legal process and remedies afforded under Maine law fail to satisfy the

minimum requirements of due process. In short, Ms. Griffin has not alleged an actionable § 1983 claim.

*4. State Law Claims*

Ms. Griffin asserts many state law contract, quasi-contract, negligence, fraud, and other tort claims against Defendants Presque Isle and PIHA. Because Ms. Griffin has not alleged an actionable federal claim, it is not appropriate for the Court to exercise supplemental jurisdiction over the state law claims. *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."). Ms. Griffin must pursue those remaining claims, if at all, in state court.

## III. Motion for a Temporary Restraining Order

A temporary restraining order operates to "preserve the status quo, freezing an existing situation" allowing the Court to provide an effective remedy upon full adjudication of the merits. *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir. 1995). However, "[i]njunctive relief is an extraordinary and drastic remedy that is never awarded as of right." *Calvary Chapel of Bangor v. Mills*, 459 F. Supp. 3d 273, 282 (D. Me. 2020) (quoting *Monga v. Nat'l Endowment for the Arts*, 323 F. Supp. 3d 75, 82 (D. Me. 2018)). When evaluating whether to grant a temporary restraining order, the Court applies the same four-factor analysis as that used for a preliminary injunction. *Monga*, 323 F. Supp. 3d at 82. Ms. Griffin must establish a likelihood of success on the merits, a likelihood of irreparable harm, that the balance of equities favors an injunction, and that an injunction is in the public interest. *See Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 9 (1st Cir. 2012). "The sine qua non of this four-part

inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that [she] is likely to succeed in [her] quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) (citing *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993)).

For the reasons explained above, the Court has determined that the amended complaint fails to state a claim and dismissal is appropriate. Given the dismissal, the motion for temporary restraining order is moot.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Ms. Griffin's motion to file a surreply, ECF No. 72, **DENIES as moot** Ms. Griffin's motion for a temporary restraining order, ECF No. 102, and **GRANTS** Presque Isle and PIHA's motions to dismiss the amended complaint, ECF Nos. 54 & 55. Ms. Griffin's amended complaint, ECF No. 13, is **DISMISSED**.

**SO ORDERED.**

Dated this 18th day of September, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**